·WILLIAM E. FORSYTH et al., Appellees, v. J. M. LOBAUGH et al., Appellants.

**MORTGAGES:** Redemption—Sale of Equity—Specific Performance. Evidence held sufficient to sustain a finding that a conveyance of mortgage-foreclosed premises by the owner was on the consideration that grantee discharge specified encumbrances.

*Appeal from Cedar District Court.*—F. O. ELLISON, Judge.

APRIL 4, 1918.

SUIT in equity for specific performance and other re-
lief in equity. The facts are fully stated in the opinion.—
*Affirmed.*

*Kirkland & White,* for appellants.

*Hamiel & Mather, Treichler & Treichler,* and *Dutcher,
Davis & Hambrecht,* for appellees. .

STEVENS, J.—Plaintiffs, on and prior to February 14,
1913, were the owners of a tract of 200 acres of land in
Cedar County, Iowa, which was encumbered by numerous
mortgages.  George J. Nicolaus, the holder of the first
mortgage, instituted proceedings to foreclose the same,
and the remaining mortgagees appeared and filed petitions
in intervention.  On May 31, 1915, judgment and decree
were entered on each of the notes secured by the several
mortgages, and the liens thereof were established in the
following order:  George J. Nicolaus, $23,864.73; Emma S.
Reeder, $4,488.43; City National Bank, $3,175.90; Smith
& Havard, $5,722.57; Drumm  Commission  Company,
$6,362.34; O. C. Pennock, $3,316.48.  Special execution was
issued on the Nicolaus judgment, and the land sold there-
under to him for the full amount thereof, and sheriff's cer-
tificate issued to Nicolaus as purchaser.

It will be observed that Smith & Havard, intervenors
herein, held the fourth mortgage, and that their lien was
established, subject to the three preceding mortgages.
They did not redeem from the sale under the first mortgage,
but, on January 29, 1916, took an assignment of the first,
second, and third mortgages, and of the sheriff's certificate.

On or about February 24, 1916, J. M. Lobaugh, repre-
senting the Drumm Commission Company, procured a quit-
claim deed from plaintiffs, conveying the land in question,
together with the right of redemption, to him.  Within the
time allowed by law to the owner, the defendant paid to the

clerk of the district court of Cedar County $26,574.11, for the purpose of redeeming from the sheriff's sale. At this time, the amount of the claims held by intervenor was approximately $14,684.67.

On July 20, 1916, plaintiffs commenced this suit, alleging in their petition that the quitclaim deed conveying to Lobaugh the 200-acre tract, together with the equity of redemption, was made upon the express agreement and understanding with plaintiffs that Lobaugh would pay all liens prior to that of the Drumm Commission Company, and in consideration thereof, together with the release by the Drumm Commission Company of its lien and judgment against plaintiffs. The relief prayed is that the defendant be compelled to specifically perform said contract, or that the deed be cancelled and set aside; that the court made suitable provision for the adjustment and settlement of the rights of plaintiffs, intervenors, and the defendants herein. Except the necessary formal matters, the allegations of intervenors' petition and the relief prayed are substantially the same as that of plaintiff. The court found in its decree that the consideration for the quitclaim deed and the assignment of plaintiff's equity of redemption was the agreement of the defendant Lobaugh to take care of and pay the prior liens, and to receipt in full and cancel all claims and judgments against the plaintiffs.

Counsel for appellant frankly concede that, if the conclusion of the trial court upon the facts is sustained upon this appeal, the judgment and decree entered below should be affirmed. The purpose of the Drumm Commission Company in obtaining the quitclaim deed and plaintiff's right of redemption was to extend the time within which it could redeem from the prior judgments. Intervenors allege in their petition that they took the assignments of the prior judgments and purchased the sheriff's certificate of sale in reliance upon an oral agreement with William E.

Forsyth that he would hold his title and equity of redemption for the benefit of intervenors, and not make any transfer thereof in any form prejudicial to them; that they did not know of the execution of the quitclaim deed and assignment of the equity of redemption to Lobaugh until after the time for redemption from the Nicolaus judgment had expired.

The defendants, within the time allowed by law, redeemed from the sheriff's sale by depositing with the clerk $26,574.11, the full amount necessary for that purpose. The result, therefore, was that intervenors, who, as stated above, were the owners of judgments against plaintiffs for something over $14,000, in addition to the amount represented by the certificate of purchase, lost their lien upon the land, and defendant obtained title thereto by paying the amount necessary to redeem from the sheriff's sale, which, added to the judgment of the Drumm Commission Company, was much less than the fair value thereof, which was estimated by the several witnesses called by plaintiffs at from $200 to $225 per acre. This left plaintiff indebted to intervenor for the amount of the judgments held by it, and defendant in a position to receive full payment of its judgment, together with the amount paid to redeem from the sheriff's sale, and a handsome profit besides.

The evidence relating to the transaction between plaintiffs and Lobaugh, as the result of which the quitclaim deed conveying to him the 200-acre tract, together with the equity of redemption, was executed, in substance was that, on or about the 24th day of February, 1916, Lobaugh, with O. C. Pennock, a brother-in-law of the plaintiff William E. Forsyth's, went to the latter's home, where he proposed said conveyance. This, according to the testimony of plaintiff, he declined to make, for the reason that he was unwilling to do anything to prejudice the interests of the prior lien holders, or to sign any instrument until he had

consulted his attorney. He further testified that Lobaugh agreed, in consideration for the quitclaim deed conveying to him the land and the equity of redemption, that he would pay off and satisfy in full all prior liens and encumbrances against the land, release the judgments and all claims in favor of the Drumm Commission Company, including a mortgage upon a 35-acre tract owned by plaintiff, in addition to the 200 acres which had been sold at sheriff's sale; that he repeatedly told him he would not execute the deed unless the defendant would do this. Pennock testified in chief that Lobaugh assented to this, but was somewhat less positive upon cross-examination. Another witness testified that Lobaugh told him, in August, 1916, that he had agreed to pay off the claims ahead of the Drumm Commission Company, but that the attorney for Nicolaus had slept on his rights, and that he did not then have to do so. Lobaugh frankly admitted that, at the time he procured the execution of the quitclaim deed, he fully expected to pay the prior indebtedness. This, of course, was necessary, in case intervenors redeemed from the sheriff's sale, to protect the judgment in favor of the Drumm Commission Company. No other consideration was paid for the deed and assignment, except the alleged agreement of defendant to pay and settle all prior encumbrances, and the release of the judgment of the Drumm Commission Company and of its mortgage upon the 35-acre tract, which, on account of prior liens, was clearly of no value. Lobaugh, however, denied that he at any time agreed that the Drumm Commission Company or he himself would pay the prior encumbrances; and some correspondence between himself and the attorneys for plaintiff, offered in evidence by him, tended in some degree to sustain his theory of the transaction, but, when viewed in the light of all the evidence, is not persuasive. The court below found an express agreement on the part of the defendant, in consideration of the

execution of the quitclaim deed to him, to pay off and satis-
fy the prior liens, and to release all claims held by the
**Drumm Commission Company** against the plaintiff, and a
decree was entered in accordance with this finding.     It
may be that intervenors were somewhat careless in failing
to redeem from the sheriff's sale, but they did not know of
the quitclaim deed to defendant, and evidently felt secure
in the belief that plaintiff could and would not redeem, and
that the time within which defendant could do so had ex-
pired.     If appellant's contention were to prevail herein,
the Drumm Commission Company would be in a position
to obtain full payment of the amount paid for redemption,
its own judgment, and a substantial profit on the sale
of the land, whereas plaintiff would be left with unsatisfied
judgments against him for $14,000.     It is claimed that he is
insolvent, but whether solvent or not, he had a right to have
the full value of the land applied to the discharge of the
liens established against it.     Under the agreement found
by the court, defendant was required to pay all of the liens
that were superior to that of the Drumm Commission Com-
pany, and to also release its judgment and the mortgage
held by it upon the 35-acre tract.

In our opinion, this finding is amply sustained by the
evidence, and we are not disposed to interfere therewith.
It is our conclusion, therefore, that the judgment and de-
cree of the lower court should be, and it is,—*Affirmed.*

PRESTON, C. J., EVANS and GAYNOR, JJ., concur.